JOSEPH METCALF v. SERIL COOK, ET AL.

2  355
7  425

Where property is put in trust for the separate use of a married woman, she has no power to charge or dispose of the same except as expressly provided in the instrument creating the trust.

THIS was a Bill in Equity against Seril Cook, trustee under the will of Elisha Waterman, late of Cumberland, deceased, Richard Carrique, late trustee under said will, Abigail Whipple and Bennett Whipple. The second section of the will of Elisha Waterman devises and bequeaths certain real and personal estates to Richard Carrique in trust, " for him the said Richard Carrique, to take possession of and to manage, and also to collect and receive the rents and profits of said real estate, as well as the interest and income of said personal estates, and, as often as once in every year, to pay over to my daughter, Abigail Whipple, wife of Bennett Whipple, all such rents, profits, interests and income to and for her sole separate and exclusive use and benefit during the term of her natural life, free, exempt and discharged from the control, management, disposition or intermeddling of her said husband, and free, exempted and discharged at all times from all liability for his debts and from all attachments of

48

his creditors. And my will is and I hereby authorize and empower my said daughter Abigail Whipple to give, devise and bequeath said real and personal estate by her last will and testament, in the same full and legal manner and with like legal effect as a sole and unmarried woman may give and devise her estate. But if my said daughter, Abigail Whipple, should decease without disposing of said estate as aforesaid, then I do hereby give, grant and devise the same to the children of my said daughter Abigail Whipple, living at the time of her decease, and the representatives of such children as may be dead, in fee simple ; and, in case of the death of the said Abigail without disposing of said estate as aforesaid and without leaving children or their representatives, then I give and devise the same in fee simple to my surviving children or the representatives of such of them as may be dead. And if the said Richard Carrique, should die before my said daughter Abigail Whipple, then in that case, I hereby authorize, empower and request the Court of Probate for the time being of the town of Cumberland, to select and appoint a suitable and discreet person, as trustee of said estate, and when so appointed, such trustee may and shall have and exercise the same power and control in all respects over and in relation to said estate, as the trustee herein appointed by me can have and exercise. Provided however, that if my said daughter, Abigail Whipple, shall survive her husband, then my will is and I hereby devise the said trust estate to her my said daughter, her heirs and assigns forever. And I hereby direct the said trustee to make and execute all necessary transfers and conveyances to her immediately after the decease of her husband."

The eighth section of the bill authorizes and empowers

the trustee to sell and convey any part of the estate devised and bequeathed to him in trust, as aforesaid, the said Abigail Whipple joining in said conveyance in testimony of her assent to the same, the proceeds thereof to be by said trustee holden for the purposes and upon the trusts before mentioned.

The bill sets forth that on the 22d day of April, 1844, the plaintiff received a certain promissory note payable to him on demand, signed by one Amasa Whipple, the son of Abigail, and guaranteed by said Richard Carrique, in his capacity as trustee under said will and by Abigail Whipple, the cestui que trust under said will, and paid the money therefor to said Amasa, who was the agent and tenant of the farm of said Abigail ; that the said note has never been paid except certain payments of interest thereon, as set forth by indorsements upon the back of said note ; that the said Carrique trustee and said Abigail, the cestui que trust, by their guaranties aforesaid appropriated the sum aforesaid to the payment of said note in default of the payment thereof by the said Amasa, out of the trust estate aforesaid ; that the said Amasa hath not paid the same, though proceedings at law have been commenced against him for the purpose of collecting the same, and though he hath been repeatedly requested to pay the same. The bill prays that the respondents be directed to pay the plaintiff out of said trust estate the amount due upon said note and the guaranty thereof aforesaid, and for general relief.

To this bill the respondents demurred generally for want of equity.

*Jenckes* in support of the demurrer contended. The defendant, Abigail Whipple, had no estate in the land it-

self, but only a right in the annual rents and profits, and even an alienation in the mode prescribed does not annul the trust, but converts it into a charge upon the proceeds which are to follow the same course of settlement as the land. She had no power to anticipate, because she had no ascertained property in the estate until after the collection of the rents and profits by the trustee. Her power to charge, or dispose of the estate is defined by the instrument creating the trust and can be exercised only to the extent and in the mode therein prescribed. This is the doctrine of the American and later English cases, which in this respect overrule the earlier decisions, according to which a married woman in regard to her separate estate was considered in equity as a *feme sole*, and her estate liable for her general engagements. This was so decided by Lord Thurlow in *Hulme* v. *Tenant,* (1 Bro. Ch. Cases. 16, 1 White & Tudor, 324.) But in the very next case, *Pybus* v. *Smith,* (1 Vesey jr. 193,) the evils of this doctrine appeared and it was questioned by succeeding chancellors, as exposing the estates of a married woman to the liabilities of her husband even more in equity than at law. In *Whistler* v. *Newman,* (4 Ves. 134,) where the trustees alienated the separate property of the wife, consisting of stock, they were decreed to replace it, after she became discovert, notwithstanding she had joined in the alienation. See also *Mores* v. *Huish,* (5 Vesey, 692.) In *Hurling* v. *Rocheford,* (8 Ves. 164,) and *Jones* v. *Harris,* (9 Ves. 486), Lord Eldon expressed his regret at the rule established by Lord Thurlow, and originated the idea that the contract in order to charge the separate estate must indicate an intention so to do. This view was adopted in *Francis* v. *Wigzell,* (1 Madd. 145,) and followed by Sir Wm. Grant.

*Parkes* v. *White*, (11 Ves. 222.) *Essex* v. *Atkins*, (14 Ves. 541.) *Sturgis* v. *Corp*, (13 Ves. 144.) *Bullpin* v. *Clarke*, (17 Ves. 362.) Yet no particular form was necessary to indicate this intention and where a *feme covert* having the absolute interest in the property with a general power of appointment, gave her promissory note, it was holden sufficient execution of the power. But while such was the course of decision in England, the same question came before the American Courts, first, in *Ewing* v. *Smith*, (3 Dessaus. 417,) in which it was held, that a feme covert has no power with regard to her separate estate, but what has been expressly given to her by the instrument of settlement, and that any power so given must be strictly pursued. This rule was re-affirmed and finally settled in South Carolina in *Reid* v. *Lamar*, (1 Strobhart. Eq. 27.) In the *Methodist Episcopal Church* v. *Jaques*, (3 Johns. ch. 78,) the same rule was adopted by Chancellor Kent, but was reversed by the Court of Appeals and the English rule established. Since this time, however, the rule laid down in *Ewing* v. *Smith*, has been re-instated by legislative enactment, and even before this, the Courts had indicated a disposition to a stricter construction. *Noyes* v. *Blakeman*, (3 Sanf. 531.) In Pennsylvania, Tennessee, Missouri and Virginia, it is settled that a *feme covert* has no power over her separate estate but such as is expressly given to her in the deed of settlement. *Lancaster* v. *Dolan*, (7 Rawle 231.) *Dorrance* v. *Scott*, (3 Whart. 309.) *Rogers* v. *Smith*, (4 Barr 93.) *Litton* v. *Baldwin*, (8 Humph. 209.) *Doty, et al.* v. *Mitchell*, (9 Sm. & Marsh. 435.) *Williamson* v. *Beekham*, (8 Leigh. 20.) The tendency of the later English cases is in the same direction. *Murray* v. *Barlee*, (3 Mylne & Keene 223.) *Massey* v. *Parker*, (2 My. & K. 174.)

*Woodmeston* v. *Walker*, (2 Rus. & M. 197.) In 1838, the question came before Langdale M. R. in *Tullett* v. *Armstrong*, (1 Beav. 1,) who held that a feme covert could not alienate an estate given to her sole and separate use where she was without this power under the deed of settlement, and, on appeal, Lord Cottenham affirmed this decision, (4 My. & Cr. 404,) overruling his own opinion in *Owens* v. *Dickenson*, (1 Cr. & Ph. 53.) So that now even in England, where the power given to a *feme covert*, is no broader than is the case under this will, her separate property would not be liable for her general engagements. The fact, that the trustee joined in the guaranty, as is decided by Lord Thurlow, adds no force to it. The relief sought, cannot therefore be granted, because, Abigail Whipple, having only a right to the annual rents and profits when collected, there is no property upon which it can be made a charge, and, if there be, it can only be charged in the mode prescribed in the instrument of settlement.

*Bradley* for the plaintiff. The will by which this trust is created, gives to Abigail Whipple the annual income of the trust property for her sole and separate use ; a power to dispose of the estate by devise or, jointly with the trustee, by sale. If she dies intestate, it descends to her children, or, if she has none, to the issue of the testator. The question is, whether this property, if pledged by the trustee and cestui que trust, shall be subject to the pledge. The principles which govern such cases, are stated in II Story's Eq. Jur. sections 1394 to 1401. Restraints upon alienation and anticipation are upheld ; the mere general engagements of the *feme covert* will not bind her separate estate ; a charge or disposition for the

benefit of her husband, which is the character of most of the cases cited, will be jealously scrutinized by the Courts; but in her contracts with strangers, where the intention is to charge the separate estate, such intention will, if possible, be effectuated, and may be inferred not only from the express words, but from the circumstances of the contract. If Judge Story's statement of the law is correct, the plaintiff is entitled to the relief sought. It is unnecessary to sift and collate the conflicting authorities of the English and American Courts, since this case falls within the more restricted rule of the American decisions. The right of disposition is incident to ownership; if the separate estate is absolutely given, it may be absolutely disposed of; if only the annual income is given, that may be disposed of. The right to sell includes the right to pledge, and a pledge may be created by any informal contract from which the intention to pledge can be inferred. (7 Har. & Johns. 296. 2 Gill & Johns. 1. 7 Paige 9.) Even in South Carolina, money advanced for the benefit of the separate estate will be a charge upon it. *Frazier* v. *Center*, (1 McCord 276,) and, in New York, notwithstanding Chancellor Kent's opinion, the separate estate will be bound for money advanced for its benefit or upon its credit. *North American Coal Company* v. *Dyett*, (20 Wend. 570. 3 Sanf. 531.) *Gardner* v. *Gardner*, (7 Paige 112.) In this case the maker of the note is the agent of Abigail Whipple and the tenant of the trust estate and must be presumed to have received the money for her use to be applied for the improvement of the estate. In Pennsylvania the law is unsettled. *Thomas* v. *Folwell*,) 2 Whart. 11.) *Lancaster* v. *Dolan*, (1 Rawle 23.)

The rule that where a specific mode of disposition is

prescribed, it must be strictly pursued, does not apply to a disposition of her annual income, for in relation to that, no mode is prescribed. If she should procure an advance with the assent of the trustee upon an order for its payment out of her annual income, her income would be bound, and her contract here can be construed to mean nothing less. Or to look at this question in another light, here is a plain power to sell given to the trustee and *cestui que trust*, and in such mode that the purchaser is not bound to look to the application of the purchase money. If, therefore, they choose to invest the property to the amount of four hundred dollars in this note or to pledge it for so much on account of the note, what is to prevent? The only limitation on the trustee's power to sell is her assent in writing and her signature to this note is such an assent, and when you couple her signature with his as trustee, you can infer no other intention than that she intended to bind her separate estate for the payment of the note.

HAILE, J. delivered the opinion of the Court.

The respondents by their demurrer admit the truth of such allegations in the complainant's bill as are well pleaded. The right of the complainant therefore to the exercise of the equitable jurisdiction of this Court must depend upon the allegations in said bill, the legal construction of the said will of Elisha Waterman, the trusts thereby created; and such rules of equity applicable to said trusts as may be deemed consistent with the established laws and policy of this State relative to the legal rights and liabilities of married women, and their power and control over their separate property and estate.

Such rights, liabilities, power and control, are well

Metcalf *v.* Cook, et al.

established and defined in this State, by positive statute, and by the rules of the common law. And a feme covert here, is not deemed in relation to her contracts, as in some cases in England, a feme sole. But her right and power to bind herself or her separate property must depend in each case, upon our statutes, the rules of the common law, or upon some legal instrument creating such right and power.

This guaranty of said promissory note by said Abigail Whipple, could not make her personally liable either at law or in equity, because she, being at the time a feme covert, had no power to give such guaranty.

In considering therefore the claim of the complainant upon the separate property and estate of said Abigail, this note standing alone cannot be deemed legal evidence to support this claim ; but in order to sustain this claim, it must be shown that by the rules of equity she had power under the said will of her father and the trusts thereby created so to pledge her separate property.

The rules of the English chancery in regard to the power of a feme covert over her separate estate, as laid down in their former and later decisions, are very conflicting, as will be seen by reference to the cases cited at the argument of this cause. And these decisions being so conflicting and unsatisfactory, and opposed to the policy of our laws and institutions, we deem them an unsafe guide as precedent or authority for the decision of this case ; and especially as these decisions are almost directly opposed to the decisions on this subject of the highest and most respectable judicial tribunals of several of our sister States, the policy of whose laws and the practice under them more nearly conform to our own.

For while by the English decisions it is held that a feme covert, in respect to her separate estate, is to be regarded as a feme sole, with all the powers which belong to that character, and that her note or bond or other obligation will bind her estate, the rule adopted in most of the American Courts is, that a married woman has no power in relation to her estate, but such as has been expressly given to her, and that her note or bond will not charge her separate estate, except where a provision for that purpose is contained in the instrument creating the separate estate.    (65 Law Library 370.)

The lead in departing from the English and establishing the American doctrine was taken by the Court of Appeals of South Carolina, in the case of *Ewing* v. *Smith,* in 1811 ; and has been since affirmed by repeated decisions ; and, was finally authoritatively settled by that Court, in *Reid* v. *Lamar,* (1 Strobhart's Equity, 27, 37,) in 1845, in which latter case, it was decided that an estate settled to the separate use of a feme covert, to be at her " full and free disposal," was yet not chargeable by a note given by her and her husband.   And this Court held it to be the settled law of that State, " that where property is given or settled to the separate use of a married woman, she has no power to charge, encumber or dispose of it, unless in so far as power to do so has been expressly conferred on her by the instrument creating her estate ; which power must be strictly pursued."

This decision is in conflict with many English cases, in which it has been held that she is a feme sole, with respect to her separate property, and may charge or dispose of it as she pleases, unless in so far as she is expressly restricted by the instrument.

Chancellor Kent, in the case of the *Episcopal Church*

v. *Jaques*, (3 Johnson's Chancery Rep. 78,) after a careful review of the English authorities, in a clear and forcible argument, repudiates the English doctrine, and supports the doctrine of the South Carolina Courts, as the true rule in equity based upon wise policy and practical common sense.

This decision of Chancellor Kent, however, was overruled by the common law judges in the Court of Errors. But the wisdom of the Legislature of New York has corrected this last error, by their revised statutes; and the decisions of the Courts in that State under these statutes, have adopted the decision of Chancellor Kent, to a great extent, as the true rule in equity on this subject.

In Pennsylvania, Tennessee, Mississippi and Virginia, the rule of the South Carolina cases and the views of Chancellor Kent have been adopted. And, in the case of *Williamson* v. *Beckham*, (8 Leigh, 20, 27,) it is said by Tucker, J. " I am of opinion that *a feme covert*, holding separate property in real estate by deed or will, prescribing a peculiar mode of disposition, cannot dispose of it in any other mode, although the deed or will does not negative such other mode expressly."

Another rule equally well established in law and equity should be applied in construing the said will of Elisha Waterman; that the intention of the testator should be the guide to govern in this construction.

Now let us apply these rules to the instrument in question as the proper test of the complainant's claim set up in his bill.

The testator does not give and devise directly to his said daughter Abigail Whipple, the personal and real estate intended by him as a bounty to her; but gives and devises it to Richard Carrique in trust, for said trustee

"to take possession of and manage ; and, also, to collect and receive the rents and profits of said real estate as well as the interest and income of said personal estate, and as often as once in every year to pay over to his said daughter Abigail Whipple all such rents, profits, interest and income to and for her sole, separate, exclusive use and benefit during the term of her natural life."

The testator in said will empowers his said daughter to give, devise and bequeath said real and personal estate by her last will and testament with like legal effect as might be done by a sole and unmarried woman.

The testator also authorizes his said trustee to sell and convey any part of said trust estate, the said Abigail joining in the conveyance in token of her consent ; but the said trustee is required by the will to invest the proceeds of such sale for the same purposes and trusts.

It is apparent therefore from the provisions of this will, that the said Abigail, during the life of her husband, could acquire or derive no benefical interest from this trust estate, beyond the right to demand and receive the annual rents, income and profits thereof.

Nor could she exercise any legal or equitable control over said estate beyond her power to dispose of the same by her last will and testament, or to join with the trustee in the conveyance of the same for the purpose of executing the said trust agreeably to the intention of the testator.

The ostensible and expressed intention of the testator in creating this trust, was to put the trust property beyond "the control, management, disposition or intermeddling of the husband of said Abigail ; and to exempt it, at all times, from all liabilities for his debts and from all attachments of his creditors."

Metcalf *v.* Cook, et al.

We think it also fairly inferable from the will itself, that it was the intention of the testator, that this trust property should in no way be subjected to, or effected by the indiscretion, want of experience in business matters, or generous sympathies of his daughter ; and that it should in no way be subject to her control, except as expressly provided in said will. The main object of his bounty was to secure to his said daughter a generous and sure support during the term of her natural life.

This being the condition of the cestui que trust, she had no right or power to anticipate the payment of, nor to mortgage or pledge the annual income and profits of said trusts estate ; nor could the trustee confer any such right or power by giving his assent, or by joining with said cestui que trust in any contract or conveyance relative to said trust estate. · For such conduct, on the part of the trustee, would be clearly a breach of his trust, as it would thwart the intention of the testator.

It was contended by the solicitor of the complainant that the right to sell, includes the right to pledge ; and that it might be fairly inferred that the money obtained by this note was on account of the trust estate ; or that the note might be deemed an investment by the trustee and cestui que trust to that amount.

But we apprehend that this point cannot be sustained. No express power is given in the will to raise money on account of, or for the use and benefit of the trust estate ; but only power to sell any part of said estate, and to invest the proceeds of such sale for the same purposes and trusts.

But even if such power had been given, it may well be doubted whether the allegations in the bill are such

that any fair and reasonable inference could be drawn from them to support this point.

The allegation in the bill is, that the complainant paid the money for said note to the agent and tenant of the farm of said Abigail. If by tenant of the farm is meant the tenant of the trust estate, it is clear that said Abigail could legally have no such tenant.

We think, therefore, it would be too strained and unreasonable an inference from the allegations in the bill, to come to the conclusion that money on this note was procured for the benefit of said trust estate, or that said note was intended as an investment of property to the amount of four hundred dollars, on account of said trust.

The questions raised in this cause have been, for the first time, agitated under the equitable jurisdiction of this Court ; they are questions of great practical importance to the citizens of this State ; for very large amounts of property in this State have been invested under similar trusts for the use of married women and minor children.

And we have endeavored to decide this case upon such principles of equity, as we deem most consistent with our laws and the policy of our institutions, and as will best carry out and protect such trust property, and most effectually secure the execution of such trusts.

For it is the imperative duty of this Court scrupulously to guard and protect the rights and interests of married women and minor children.